1
2
3
4
5
6

## IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8

9  Steve Arthur Martinez,

10                     Petitioner,

11  v.

12  Charles L. Ryan, et al.,

13                     Respondents.

14

15

No. CV-13-02423-PHX-DLR (ESW)

**REPORT AND RECOMMENDATION**

16  **TO THE HONORABLE DOUGLAS L. RAYES, UNITED STATES DISTRICT**

17  **JUDGE:**

18          On November 26, 2013, Steve Arthur Martinez ("Petitioner") filed a Petition

19  under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (the "Petition") (Doc. 1).  On June

20  19, 2014, Respondents filed their Answer (Doc. 10).  Petitioner did not file a reply.  The

21  matter is deemed ripe for consideration.[1]

22          Petitioner raises six grounds for habeas relief in the Petition.  The undersigned

23  finds that the Petition is time-barred under the one-year statute of limitations set forth in

24  the Anti-Terrorism and Effective Death Penalty Act of 1996 (28 U.S.C. § 2244).  The

25  undersigned further finds that all of the grounds alleged in the Petition are either

26  procedurally barred or meritless.  It is therefore recommended that the Petition be denied.

27  ─────────────

28          [1] The case was reassigned to U.S. Magistrate Judge Eileen S. Willett on November
14, 2014.

## I. BACKGROUND

Petitioner is currently incarcerated at the Arizona State Prison Complex in Florence, Arizona.  Petitioner is serving 30.5 years for convictions of the following crimes: (i) burglary in the second degree (a class 3 felony); (ii) kidnapping (a class 2 felony); (iii) aggravated assault (a class 4 felony); and (iv) sexual assault (a class 2 felony).  (Doc. 10-8 at 65-66).[2]  As it relates to the merits of two of Petitioner's claims for habeas relief, a brief summary of the facts underlying these convictions is necessary.

### A.  Facts Underlying Petitioner's Convictions

In the early morning hours on June 18, 2006, an 88 year old woman named Sally called and asked her daughter, Patricia, to come over to her house.  (Doc. 10-3 at 49).  Sally was "very upset" and was "having trouble talking."  (*Id.*).  When Patricia arrived at Sally's house, she noticed that the glass on the kitchen door had been broken and saw a rock inside the door that had been used to smash the glass.  (*Id.* at 53-54, 57).  Sally was still very upset, was shaking, and was holding her left elbow.  (*Id.* at 57).  Patricia saw blood on the collar area of Sally's pajamas.  (*Id.* at 60).  Patricia then searched the house for an intruder, while Sally followed behind.  (*Id.* at 59-60).

When Patricia completed the search, she contacted the police.  (*Id.* at 65-66).  While on the phone, Patricia saw blood on the back of Sally's pajamas that she did not see before as Sally had been following her throughout the house.  (*Id.* at 66).  Seeing the blood, Patricia exclaimed to the police dispatcher "[O]h, my God, there's blood all over the back of her pajamas."  (*Id.* at 69-70).  Sally then turned to Patricia and yelled "I've been raped."  (*Id.* at 70).

Paramedics arrived and treated Sally, who sustained a fracture of the olecranon (the bone at the tip of the elbow where the joint comes together).  (*Id.* at 41-42). Sally was also examined by registered nurse Shawn Bonner.  (Doc. 10-4 at 25, 31-33).  Nurse

---

[2] Citations to pages within exhibits to Respondents' Answer (Doc. 10) refer to the page numbers assigned by the Clerk of Court when filed on June 19, 2014.  For example, Exhibit M to Respondents' Answer is filed as Document 10-3.  A citation to a page within Exhibit M would appear as (Doc. 10-3 at __).

1    Bonner noted numerous contusions and abrasions on Sally's chin, left arm, left and right

2    wrists, legs, and one of her breasts.  (*Id.* at 34-46).  In addition, Nurse Bonner performed

3    a genital and anal exam and found multiple injuries.  (*Id.* at 46-64).

4           Nurse Bonner's examination included swabbing multiple areas of Sally's body for

5    DNA.  (*Id.* at 45, 66-67, 75, 81-83, 100).  A forensic scientist at the City of Phoenix

6    Police Department determined that the DNA profile from Sally's right breast was a

7    hundred percent match with Petitioner's known DNA.  (Doc. 10-5 at 99, 149).  The

8    scientist also determined that the DNA profile taken from Sally's left fingernail could not

9    have come from anyone other than Petitioner.  (Doc. 10-5 at 154).  Moreover, Petitioner

10   could not be excluded from the DNA mixture taken from Sally's left thigh.  (Doc. 10-5 at

11   155-56).

12          **B.  Direct Appeal, State Post-Conviction Relief, and Petitions for Review**

13          Following his 2008 conviction and sentence, Petitioner appealed to the Arizona

14   Court of Appeals.  In its October 1, 2009 decision, the Arizona Court of Appeals

15   affirmed.  (Doc. 10-8 at 214-28).  On March 16, 2010, the Arizona Supreme Court denied

16   review of Petitioner's appeal.  (Doc. 10-9 at 3).

17          On August 10, 2010, Petitioner's appellate counsel filed an untimely notice of

18   post-conviction relief ("PCR").  (Doc. 10-9 at 5-8).  Counsel claimed that the untimely

19   PCR filing was due to "ineffective assistance of appellate counsel."  (*Id*. at 6-7).  The

20   Superior Court allowed the untimely PCR filing to proceed, but stated that the "allowance

21   does not constitute any expression of opinion that defendant has met the requirements to

22   file an untimely petition, or on the merits of any such claim, or that any claims raised in

23   the petition are not procedurally precluded."  (*Id*. at 11-12).  The court also appointed the

24   Office of the Legal Advocate to represent Petitioner in his PCR matter.  (*Id*. at 12).

25          After PCR review, Petitioner's PCR counsel did not find any claims for relief to

26   raise in PCR proceedings.  (*Id*. at 16-17).  On February 11, 2011, the Superior Court

27   granted Petitioner 45 days in which to file a pro per PCR petition.  (*Id*. at 20).  After

28   multiple deadline extensions, on July 5, 2011, Petitioner filed a PCR petition that raised

1   five claims. (*Id*. at 25-95). On November 14, 2011, the Superior Court denied his

2   petition, finding that four of the five issues are "all matters that could have been raised on

3   direct appeal under Rule 31, Arizona Rules of Criminal Procedure, and/or a post-trial

4   motion under Rule 24, Arizona Rules of Criminal Procedure" and are therefore precluded

5   from postconviction relief under Rule 32, Arizona Rules of Criminal Procedure. (*Id*. at

6   109). As to the final issue, which alleged the ineffective assistance of counsel, the Court

7   found that Petitioner failed to demonstrate a colorable claim. (*Id*. at 109-10).

8       After the denial for PCR relief, Petitioner filed a petition for review with the

9   Arizona Court of Appeals. (*Id*. at 122-30). On June 24, 2013, the Arizona Court of

10  Appeals denied relief, explaining that Petitioner failed to comply with Rule 32.9 of the

11  Arizona Rules of Criminal Procedure, which requires a petitioner to present issues and

12  material facts supporting a claim in a petition for review. (*Id*. at 144-45). The Court also

13  found that the trial court did not abuse its discretion in denying post-conviction relief.

14  (*Id*.). On November 13, 2013, the Arizona Supreme Court denied Petitioner's petition for

15  review. (*Id*. at 170).

16                          **II. FEDERAL HABEAS LAW**

17      There are a number of bars that may prevent a federal court from reviewing the

18  merits of claims alleged in a federal habeas petition. Respondents argue that the Petition

19  is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996.

20  Respondents also argue that the majority of Petitioner's claims are procedurally barred

21  under the exhaustion-of-state-remedies and procedural default doctrines. While

22  Respondents concede that two of Petitioner's claims are not barred under those doctrines,

23  Respondents assert that those two claims lack merit.

24      **A. Antiterrorism and Effective Death Penalty Act of 1996**

25      On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996

26  ("AEDPA") became effective. 28 U.S.C. § 2244. AEDPA requires a state prisoner to

27  file his or her federal habeas petition within **one year** of the latest of:

28              1. The date on which the prisoner's judgment of conviction
                became final in state court;

2. The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from filing by the State action;

3. The date on which the right asserted was initially recognized by the United States Supreme Court, if that right was newly recognized by the Court and made retroactively applicable to cases on collateral review; or

4. The date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *see also Hammerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007) .

AEDPA's one-year statute of limitations, however, is tolled during the "time during which a *properly filed* application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2) (emphasis added); *Roy v. Lampert*, 465 F.3d 964, 968 (9th Cir. 2006) (limitations period is tolled while the state prisoner is exhausting his or her claims in state court and state post-conviction remedies are pending) (citation omitted).  A state post-conviction petition is "properly filed" when its delivery and acceptance are in compliance with the state rules governing filings.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Orpiada v. McDaniel*, 750 F.3d 1086, 1089 (9th Cir. 2014) (court looked to Nevada state filing requirements in determining whether habeas petitioner's post-conviction relief petition was a "properly filed" application that is eligible for tolling).

AEDPA's statute of limitations is also subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 645 (2010) ("Now, like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable tolling in appropriate cases.").  Yet equitable tolling is applicable only "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Roy*, 465 F.3d at 969 (citations omitted); *Gibbs v. Legrand*, 767 F.3d 879, 888 n.8 (9th

- 5 -

1   Cir. 2014).   A petitioner must show (i) that he or she has been pursuing his rights

2   diligently and (ii) some extraordinary circumstances stood in his or her way.  *Pace v.*

3   *DiGuglielmo,* 544 U.S. 408, 418 (2005); s*ee also Waldron-Ramsey v. Pacholke*, 556 F.3d

4   1008, 1011 (9th Cir. 2009); *Roy*, 465 F.3d at 969.

5       **B.  Exhaustion-of-State-Remedies Doctrine**

6       The exhaustion-of-state-remedies doctrine is another potential bar to federal

7   habeas relief.  For over 100 years, it has been settled that a "state prisoner must normally

8   exhaust available state remedies before a writ of habeas corpus can be granted by the

9   federal courts."  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also Picard v. Connor*,

10  404 U.S. 270, 275 (1971) ("It has been settled since *Ex parte Royall*, 117 U.S. 241, 6 S.

11  Ct. 734, 29 L.Ed. 868 (1886), that a state prisoner must normally exhaust available state

12  judicial remedies before a federal court will entertain his petition for habeas corpus.").

13  The rationale for the doctrine relates to the policy of federal-state comity.  *Picard*, 404

14  U.S. at 275 (1971).  The comity policy is designed to give a state the initial opportunity to

15  review and correct alleged federal rights violations of its state prisoners.  *Id.*  In the U.S.

16  Supreme Court's words, "it would be unseemly in our dual system of government for a

17  federal district court to upset a state court conviction without an opportunity to the state

18  courts to correct a constitutional violation."  *Darr v. Burford*, 70 S. Ct. 587, 590 (1950);

19  *see also Reed v. Ross*, 468 U.S. 1, 11 (1984) ("we have long recognized that in some

20  circumstances considerations of comity and concerns for the orderly administration of

21  criminal justice require a federal court to forgo the exercise of its habeas corpus power")

22  (citations and internal quotation marks omitted).

23      The exhaustion doctrine is codified at 28 U.S.C. § 2254.  That statute provides that

24  a habeas petition may not be granted unless the petitioner has (i) "exhausted" the

25  available state court remedies; (ii) shown that there is an "absence of available State

26  corrective process"; or (iii) shown that "circumstances exist that render such process

27  ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).

28      Case law has clarified that in order to "exhaust" state court remedies, a petitioner's

federal claims must have been "fully and fairly presented" in state court. *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014). To "fully and fairly present" a federal claim, a petitioner must present both (i) the operative facts and (ii) the federal legal theory on which his or her claim is based. *See Gray v. Netherland,* 518 U.S. 152, 162-63 (1996) (claims for relief in habeas corpus must reference a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief); *Arrendondo v. Neven*, 763 F.3d 1122, 1138 (9th Cir. 2014) ("To fairly present a federal claim, a state prisoner must present to the state courts both the operative facts and the federal legal theories that animate the claim."). This test turns on whether a petitioner "explicitly alerted" a state court that he or she was making a federal constitutional claim. *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1204–05 (9th Cir. 2005). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted); *see also Lyons v. Crawford,* 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001) (federal basis of a claim must be "explicit either by citing federal law or the decisions of federal courts, even if the federal basis is self-evident or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds"); *Rose v. Palmateer*, 395 F.3d 1108, 1111 (9th Cir. 2005) (stating that a petitioner must plead the federal nature of a claim with considerable specificity).

## C.  Procedural Default Doctrine

Procedural default may also bar habeas relief. If a claim was presented in state court, and the court expressly invoked a state procedural rule in denying relief, then the claim is procedurally defaulted in a federal habeas proceeding. *See, e.g., Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). Even if a claim was not presented in state court, a claim may be procedurally defaulted in a federal habeas proceeding if the claim would now be barred in state court under the state's procedural rules. *See, e.g., Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

Similar to the rationale of the exhaustion doctrine, the procedural default doctrine is rooted in the general principle that federal courts will not disturb state court judgments based on adequate and independent state grounds. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). A habeas petitioner who has failed to meet the state's procedural requirements for presenting his or her federal claims has deprived the state courts of an opportunity to address those claims in the first instance. *Coleman v. Thompson,* 501 U.S. 722, 731-32 (1991).

As alluded to above, a procedural default determination requires a finding that the relevant state procedural rule is an adequate and independent rule. *See Id*. at 729-30. An adequate and independent state rule is clear, consistently applied, and well-established at the time of a petitioner's purported default. *Greenway v. Schriro*, 653 F.3d 790, 797-98 (9th Cir. 2011); s*ee also Calderon v. U.S. Dist. Court (Hayes)*, 103 F.3d 72, 74-75 (9th Cir. 1996). An independent state rule cannot be interwoven with federal law. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). The ultimate burden of proving the adequacy of a state procedural bar is on the state. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). If the state meets its burden, a petitioner may overcome a procedural default by proving one of two exceptions.

In the first exception, the petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law. *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014). To demonstrate "cause," a petitioner must show that some objective factor external to the petitioner impeded his or her efforts to comply with the state's procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004). To demonstrate "prejudice," the petitioner must show that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier,* 477 U.S. at 494 ("Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial.").

In the second exception, a petitioner must show that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *Hurles*, 752 F.3d at 780. This exception is rare and only applied in extraordinary cases. *Wood v. Ryan*, 693 F.3d 1104, 1118 (9th Cir. 2012) (quoting *Schlup v. Delo,* 513 U.S. 298, 321 (1995)). The exception occurs where a "constitutional violation has probably resulted in the conviction of one who is actually innocent of the offense that is the subject of the barred claim." *Wood*, 693 F.3d at 1117 (quoting *Schlup*, 513 U.S. at 327).

### D.  Reviewing Federal Habeas Claims on the Merits

In reviewing the merits of a petitioner's claims, AEDPA requires federal courts to defer to the last reasoned state court decision. *Woods*, 764 F.3d at 1120; *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013). To be entitled to relief, a state prisoner must show that the state court's adjudication of his claims either:

> 1.  [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.  [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2010); *Harrington v. Richter,* 131 S. Ct. 770, 785 (2011).

As to the first entitlement to relief above, "clearly established federal law" refers to the holdings of the U.S. Supreme Court's decisions applicable at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). A state court decision is "contrary to" such clearly established federal law if the state court (i) "applies a rule that contradicts the governing law set forth in [U.S. Supreme Court] cases" or (ii) "confronts a set of facts that are materially indistinguishable from a decision of the [U.S. Supreme Court] and nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Price*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)).

1    As to the second entitlement to relief above, factual determinations by state courts

2    are presumed correct unless the petitioner can show by clear and convincing evidence to

3    the contrary.  28 U.S.C. § 2254(e)(1); *see also Stanley v. Cullen*, 633 F.3d 852, 859 (9th

4    Cir. 2011); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004).  That is, a state court's

5    determination that a claim lacks merit precludes federal habeas relief so long as "fair-

6    minded jurists could disagree" on the correctness of the state court's decision.

7    *Harrington***,** 131 S. Ct. at 786; *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).

8

9                          **III.  ANALYSIS OF THE PETITION**

10        **A.  The Petition is Time-Barred by AEDPA**

11        AEDPA's one-year statute of limitations begins to run when the time to file a U.S.

12   Supreme Court petition for writ of certiorari regarding a conviction has expired.  *Bowen*

13   *v. Roe*, 188 F.3d 1157, 1159-60 (9th Cir. 1999).  Supreme Court Rule 13 provides that a

14   "petition for a writ of certiorari seeking review of a judgment of a lower state court that is

15   subject to discretionary review by the state court of last resort is timely when it is filed

16   with the Clerk within 90 days after entry of the order denying discretionary review."

17        Here, on March 16, 2010, the Arizona Supreme Court denied review of

18   Petitioner's appeal.  (Doc. 10-9 at 3).  Therefore, under Supreme Court Rule 13,

19   Petitioner had 90 days from that date, or until June 14, 2010, in which to file a petition

20   for writ of certiorari.  The one-year statute of limitations therefore was due to expire on

21   June 14, 2011, subject to possible statutory or equitable tolling.

22        Tolling, however, does not apply in this case.  Nor does Petitioner argue that it

23   should apply.  Petitioner has the burden of showing that AEDPA's statute of limitations

24   period was sufficiently tolled.  *Zepeda v. Walker*, 581 F.3d 1013, 1019 (9th Cir. 2009).

25   Nonetheless, the undersigned will address the issue of tolling as the Court is to "construe

26   *pro se* habeas filings liberally."  *Allen v. Calderon,* 408 F.3d 1150, 1153 (9th Cir. 2005);

27   *see also Belgarde v. State of Montana,* 123 F.3d 1210, 1213 (9th Cir. 1997).

28        First, a "properly filed" PCR petition may toll AEDPA's statute of limitations.  An

1   untimely filed PCR petition is not properly filed.  Petitioner filed an untimely notice of

2   PCR on August 10, 2010.  (Doc. 10-9 at 5-8).  Although the Superior Court allowed the

3   untimely filing to proceed, the court expressly stated on October 11, 2010 that it was not

4   finding that Petitioner "has met the requirements to file an untimely petition."  (*Id.* at 11-

5   12).  In its June 24, 2013 decision, the Arizona Court of Appeals held that Petitioner's

6   PCR petition was untimely.   The Arizona Court of Appeals stated that Petitioner's

7   ineffective assistance of counsel claim was properly denied "because it was raised in an

8   untimely [PCR] proceeding."  (*Id.* at 145).

9        "When a postconviction petition is untimely under state law, that [is] the end of

10   the matter for purposes of [AEDPA's statute of limitations]."  *Pace v. DiGuglielmo*, 544

11   U.S. 408, 414 (2005).  As Petitioner's notice of PCR was filed untimely under Arizona

12   law, that is the end of the court's inquiry as to whether the PCR petition was "properly

13   filed" under AEDPA.  *See Rudin v. Myles*, 766 F.3d 1161, 1171 (9th Cir. 2014) (holding

14   that a federal habeas petitioner was not entitled to statutory tolling where the Nevada

15   Supreme Court determined that the petitioner's PCR petition was untimely).  Petitioner's

16   untimely PCR petition therefore had no statutory tolling effect on AEDPA's statute of

17   limitations.

18        Regarding equitable tolling, the Petitioner has the burden to show that

19   extraordinary circumstances beyond the Petitioner's control made it impossible for him to

20   file a timely federal petition.  *Roy*, 465 F.3d at 969; *Gibbs*, 767 F.3d at 888 n.8.  A

21   petitioner's *pro se* status, on its own, is not enough to warrant equitable tolling.  *See, e.g.,*

22   *Johnson v. United States,* 544 U.S. 295, 311 (2005) ("[W]e have never accepted *pro se*

23   representation alone or procedural ignorance as an excuse for prolonged inattention when

24   a statute's clear policy calls for promptness.").  As Petitioner has not met his burden of

25   showing that extraordinary circumstances made it impossible for him to file a timely

26   federal petition, equitable tolling is therefore unavailable.

27        Accordingly, as tolling does not apply, AEDPA's statute of limitations expired on

28   June 14, 2011.  As the Petition was filed long past that deadline (on November 26, 2013),

1    the undersigned recommends that the Court deny the Petition on the basis that it is time-
2    barred.

3        **B.   Grounds One, Two, Three, and Five are Barred under the Procedural**
4    **Default Doctrine.   A Portion of Ground Six is also Barred under the Procedural**
5    **Default Doctrine.**

6        Respondents argue that the majority of Petitioner's claims are procedurally barred.
7    For the following reasons, the undersigned agrees.   Ground Four and a portion of Ground
8    Six, which are not procedurally barred, should be denied on the merits as discussed in
9    Section C below.

10       **1. Grounds One and Two**

11       In Ground One, Petitioner alleges that his rights under the Sixth Amendment of
12   the U.S. Constitution were violated by allegedly being denied a jury panel of his peers.
13   To support this claim, Petitioner states:

> Petitioner was denied the inclusion of minorities of either
> Latino, or African American descent to be considered
> potential jurors to judge in this case.  Petitioner was denied a
> fair and impartial jury as a result of this violation and had an
> expectation of receiving full constitutional protections but
> was denied, as a result the jury was not impartial and the
> Judge had contact with jurors outside counsel or defendant's
> presence.

19   (Doc. 1 at 6).

20       In Ground Two, Petitioner alleges that his right to "due process of law" under the
21   Fifth Amendment of the U.S. Constitution was violated.   In support of this claim,
22   Petitioner states:

> Petitioner was subjected to prosecutorial misconduct where
> the prosecution to [sic] expressed his personal feelings
> regarding my guilt and credibility. Prosecutorial comments
> about Petitioner were designed to prejudice him before the
> jury. The court never corrected such conduct and thus error.

26    (Doc. 1 at 7).

27       Petitioner presented the above claims in his July 5, 2011 PCR Petition.  (Doc. 10-9
28   at 36-39).  In its November 14, 2011 ruling, the Superior Court found that those claims

- 12 -

"could have been raised on direct appeal under Rule 31, Arizona Rules of Criminal Procedure and/or a post-trial motion under Rule 24, Arizona Rules of Criminal Procedure." (Doc. 10-9 at 109). The court therefore found that the claims were precluded from PCR relief (Rule 32 of the Arizona Rules of Criminal Procedure). *Id.*

The Arizona Court of Appeals, in its June 24, 2013 ruling, affirmed the Superior Court's ruling. The Court of Appeals also denied relief on the grounds that Petitioner failed to comply with Rule 32.9 of the Arizona Rules of Criminal Procedure. (*Id*. at 144-45). These constitute "adequate and independent" state grounds for denying review. *Stewart v. Smith,* 536 U.S. 856, 860 (2002) (per curiam) (preclusion of issues for failure to present them at an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3) "are independent of federal law because they do not depend upon a federal constitutional ruling on the merits."). Accordingly, the undersigned recommends a finding that Grounds One and Two are barred from habeas review under the procedural default doctrine.

### 2. Ground Three

In Ground Three, Petitioner asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated as he was allegedly "subjected to ineffective assistance of trial counsel." To support this claim, Petitioner states:

> Petitioner's counsel failed to secure an expert witness to confront, refute or explain inconsistencies as to DNA evidence. Counsel failed to challenge the sufficiency of the State's search warrant based on erroneous evidence. Denial of appellate counsel to move for evidentiary hearing to ascertain the substance of his colorable claims.

(Doc. 1 at 8).

In his July 5, 2011 PCR Petition, Petitioner argued that he received the ineffective assistance of counsel at trial. Petitioner stated that his trial counsel failed to obtain an expert witness "to better explain [counsel's] theory and cause of 'transference of DNA.'" (Doc. 10-9 at 40). Petitioner also challenged the sufficiency of the search warrant in his PCR Petition. (*Id*. at 39-40). The PCR Petition, however, does not include a claim regarding the last sentence of Ground Three above (the alleged "[d]enial of appellate

1  counsel to move for evidentiary hearing to ascertain the substance of his colorable
2  claims").

3       The Superior Court, on November 14, 2011, denied the Petitioner's ineffective
4  assistance of counsel claim as Petitioner did not show that "trial counsel's performance
5  fell below an objective standard of reasonableness as defined by prevailing professional
6  norms, or that, but for counsel's actions, there is a reasonable probability that the
7  outcome of the case would have been different." (*Id*. at 110).  The Superior Court also
8  denied relief as to the sufficiency of the search warrant.  The court stated that the claim is
9  precluded from PCR relief under the Arizona Rules of Criminal Procedure because the
10 issue could have been raised on direct appeal or in a post-trial motion.  (*Id*. at 109).

11      On June 24, 2013, the Arizona Court of Appeals affirmed the Superior Court's
12 denial of relief regarding Petitioner's ineffective assistance of counsel claim.  The court
13 stated that the "claim also was properly denied as precluded- not because it was omitted
14 on appeal, but because it was raised in an untimely Rule 32 proceeding." (*Id*. at 145).
15 The Arizona Court of Appeals also affirmed the Superior Court's ruling that relief
16 regarding the sufficiency of the search warrant was precluded by the Arizona Rules of
17 Criminal Procedure.  (*Id*.)  As these constitute adequate and independent state grounds
18 for denying review, Petitioner's claims in Ground Three regarding (i) the ineffective
19 assistance of counsel, (ii) counsel's alleged failure to secure a DNA expert, and (iii) the
20 sufficiency of the search warrant are procedurally defaulted.  *Stewart,* 536 U.S. at 860.

21      Petitioner did not challenge in Arizona state court the alleged "[d]enial of
22 Appellate counsel to move for evidentiary hearing to ascertain the substance of his
23 colorable claims."  Yet returning to Arizona state court for determination of that issue
24 would be futile.  The Arizona Rules of Criminal Procedure discussed above would
25 preclude relief.  The claim is therefore procedurally defaulted.  *Beaty*, 303 F.3d at 987 (a
26 claim is procedurally defaulted "if the petitioner failed to exhaust state remedies and the
27 court to which the petitioner would be required to present his claims in order to meet the
28 exhaustion requirement would now find the claims procedurally barred") (quoting

1  *Coleman,* 501 U.S. at 735 n. 1)).

2      Accordingly, the undersigned recommends that Ground Three of the Petition be

3  denied.

4              **3.    Ground Five**

5      In Ground Five, Petitioner claims that his rights to "due process" and "equal

6  protection" under the Fifth and Fourteenth Amendments of the U.S. Constitution were

7  violated "where the trial court abused its discretion."  In support of this claim, Petitioner

8  alleges: "The State was allowed to introduce the daughters [sic] alleged statement 'I was

9  raped' as a hearsay statement that had no exception[,] was unreliable, prejudicial and

10  outweighed any probative value." (Doc. 1 at 10).  The claim was presented as Issue No. 2

11  on Petitioner's direct appeal:

12              The statements of the victim to her daughter were unreliable
              hearsay evidence which did not qualify as any exception to
13              the hearsay rule and its prejudicial effect substantially
              outweighed its probative value.  Did the trial court err in
14              denying Appellant's motion and objection to exclude the
15              statements of the victim to her daughter?

16  (Doc. 10-8 at 79).

17      Significantly, Petitioner presented the claim as a question of *state* law, not federal

18  law.  Petitioner's failure to alert the Arizona state court to the federal nature of the claim

    amounts to a failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. 364, 366
19
    (1995). While a petitioner is not required to recite "book and verse on the federal
20
    constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v.*
21
    *Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary
22
    to support the federal claim were before the state courts or that a "somewhat similar state
23
    law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*).
24
        In his 2008 Appellant's Opening Brief, Petitioner discusses Arizona law and
25
    makes no mention of a violation of federal law.  (Doc. 10-8 at 121-26).  Petitioner thus
26
    deprived the Arizona state court of the initial opportunity to review and correct the
27
    federal rights violation Petitioner now alleges.  Moreover, because Petitioner would be
28
    precluded from PCR relief on Ground Five under Rule 32 of the Arizona Rules of

Criminal Procedure, Ground Five is technically exhausted and deemed procedurally defaulted. *Beaty*, 303 F.3d at 987. The undersigned accordingly recommends that Ground Five of the Petition be denied.

### 4. Ground Six

In Ground Six, Petitioner argues that he "was subjected to a violation of the 5th and 14th Amendment U.S. Constitutional protections of due process and equal protection where the evidence was in fact insufficient to sustain guilty verdicts for aggravated assault." Respondents concede that the portion of this claim relating to due process is not procedurally barred.

Regarding the remainder of Ground Six, Petitioner did not explicitly alert the state court to the alleged federal "equal protection" violation on direct appeal. (Doc. 10-8 at 127-35). Accordingly, the undersigned agrees with Respondents that the "equal protection" portion of Ground Six was not fairly presented in state court and is thus procedurally barred for the same reasons discussed in analyzing the last sentence of Ground Three above. It is recommended that the equal protection portion of Ground Six be denied.

### C. Petitioner's Procedural Default is Not Excused

In spite of the procedural defaults, the merits of Petitioner's Grounds One, Two, Three, and Five are to be reviewed if Petitioner (i) shows cause for the default and actual prejudice as a result of the alleged violation of federal law or (ii) shows that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *McKinney v. Ryan*, 730 F.3d 903, 913 (9th Cir. 2013) (although finding the petitioner's claims to be procedurally defaulted, stating that "[n]onetheless, we will review the merits if [the petitioner] can show cause and prejudice or, alternatively, a fundamental miscarriage of justice.") (quoting *Beaty*, 303 F.3d at 987)).

Petitioner offers no reason to excuse the above procedural defaults. Although Respondents extensively briefed the procedural default issue in their Answer (Doc. 10), Petitioner has chosen not to file a reply.

Moreover, a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). The narrow exception set forth in *Martinez v. Ryan*, 132 S.Ct. 1039 (2012) does not apply in this case. Under *Martinez*, "cause" to excuse a petitioner's procedural default may be found where:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S.Ct. at 1318–19, 1320–21) (alterations in original).

Here, Petitioner's underlying ineffective assistance of counsel claims are speculative and without factual support. Petitioner's ineffective assistance of counsel claims are therefore insubstantial. *Martinez*, 132 S.Ct. at 1319 (a claim is insubstantial if it "does not have any merit or . . . is wholly without factual support"). Because Petitioner cannot meet the "substantial" claim requirement of the four-part test, the *Martinez* exception does not apply. It is recommended that the procedural default determinations set forth above for Grounds One, Two, Three, Five, and a portion of Ground Six not be excused.

**D.   Ground Four and a Portion of Ground Six Should be Denied on the Merits**

### 1. Ground Four

In Ground Four, Petitioner alleges that "[p]ursuant to the 6th Amendment of the U.S. Constitution petition [sic] was denied the essential right to confront his accuser." (Doc. 1 at 9). In considering potential state court error, the Court looks to the "last

1   reasoned decision of the state court as the basis of the state court's judgment."

2   *Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005); *Franklin v. Johnson,* 290

3   F.3d 1223, 1233 n. 3 (9th Cir. 2002). Here, the last reasoned decision of the Arizona

4   state court regarding Petitioner's claim is the Arizona Court of Appeals' October 1, 2009

5   decision. (Doc. 10-8 at 214-28). To be granted habeas relief on Ground Four, the State

6   court's decision must be (i) contrary to, or involve an unreasonable application of, clearly

7   established Federal law (as determined by the U.S. Supreme Court) or (ii) based on an

8   unreasonable determination of the facts in light of the evidence presented in the State

9   court proceeding. 28 U.S.C. § 2254(d)(1), (2).

10       First, it must be decided what constitutes "clearly established Federal law, as

11   determined by the Supreme Court of the United States," for purposes of Petitioner's

12   Confrontation Clause claim. *Meras v. Sisto*, 676 F.3d 1184, 1187 (9th Cir. 2012). The

13   relevant U.S. Supreme Court case regarding the Confrontation Clause is *Crawford v.*

14   *Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court held that the

15   Confrontation Clause prohibits the "admission of testimonial statements of a witness who

16   did not appear at trial unless he was unavailable to testify, and the defendant had a prior

17   opportunity for cross-examination." *Id.* at 53-54. Such "testimonial" statements are

18   subject to exclusion under the Confrontation Clause even if they meet a "firmly rooted

19   hearsay exception" or bear "particularized guarantees of trustworthiness." *Id.* at 40, 59,

20   68. As to "nontestimonial hearsay," however, the Court concluded, "it is wholly

21   consistent with the Framers' design to afford the States flexibility in their development of

22   hearsay law." *Id.* at 68. As to what defines a "testimonial" statement, *Crawford* provides

23   that "[t]estimony" … is typically, "[a] solemn declaration or affirmation made for the

24   purpose of establishing or proving some fact." *Id.* at 51.

25       In *Davis v. Washington*, 547 U.S. 813 (2006), the U.S. Supreme Court clarified its

26   *Crawford* decision in the context of victims' statements elicited by police questioning.

27   The Court held that statements are "nontestimonial" when they are "made in the course of

28   police interrogation under circumstances objectively indicating that the primary purpose

- 18 -

1    of the interrogation is to enable police assistance to meet an ongoing emergency." *Id*. at

2    822.   Statements are "testimonial" when the "circumstances objectively indicate that

3    there is no such ongoing emergency, and that the primary purpose of the interrogation is

4    to establish or prove past events potentially relevant to criminal prosecution." *Id*.

5         The Court must next determine whether the Arizona Court of Appeals' application

6    of the above holdings was "objectively unreasonable." *Hernandez*, 282 F.3d 1132.   The

7    Arizona Court of Appeals applied *Crawford* and *Davis* to Sally's statement "I've been

8    raped," finding:

9              In the case at bar, the circumstances, objectively viewed,
        suggest S.S. shouted, "I've been raped" as a cry for help

10             instead of an effort "to identify (or provide evidence to
        convict) the perpetrator." *Davis,* 547 U.S. at 826. [Sally] gave

11             no details about her assailant, and her statement was not made
        in response to anything the police officer said or did. It was

12             made spontaneously when P.S. exclaimed, "[O]h my God,
        there's blood all over the back of her pajamas." P.S. inquired

13             whether the officer had heard her mother's statement because

14             she wanted to ensure medical help would be sent. Paramedics
        were indeed dispatched and were the first responders on the

15             scene; they immediately attended to [Sally].

16

17   (Doc. 10-8 at 223).

18   Based on the above considerations, the Arizona Court of Appeals found that Sally's

19   statement, "I've been raped," was spontaneous and nontestimonial and that its admission

20   therefore did not violate defendant's confrontation rights.   (*Id*. at 224).

21        While Petitioner may argue that Sally's statement is "testimonial," a state court's

22   determination that a claim lacks merit precludes federal habeas relief so long as "fair-

23   minded jurists could disagree" on the correctness of the state court's decision.

24   *Harrington*, 131 S. Ct. at 786; *Yarborough,* 541 U.S. at 664.  There is   record that could

25   cause a "fair-minded jurist" to conclude that Sally's statement was not testimonial—i.e.

26   not made as a "solemn declaration or affirmation made for the purpose of establishing or

27   proving some fact."   The Arizona Court of Appeals' application of *Crawford* and *Davis*

28   to Petitioner's Confrontation Clause challenge is therefore objectively reasonable.

     Additionally, the violation of the Confrontation Clause is subject to harmless error

analysis.  *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).  If the error did not have a "substantial and injurious effect or influence in determining the jury's verdict," Petitioner is not entitled to habeas relief. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  In determining such effect or influence, it is considered whether the weight of the evidence is counterbalanced with the statement admitted into evidence in violation of the Confrontation Clause.  For example, in considering whether a prosecutor's comments "had substantial and injurious effect or influence in determining the jury's verdict," the Ninth Circuit stated that "[i]f the evidence is at least in 'virtual equipoise' on this question, such that we have grave doubt as to the harmlessness of the constitutional trial error, the [habeas] petition must be granted."  *Deck v. Jenkins*, 768 F.3d 1015, 1030 (9th Cir. 2014).

Nurse Bonner, who examined Sally, testified that someone or something had penetrated Sally's vulva, leaving two "penetration injuries" on the inner aspect of her labia majora, a third that tore her posterior fourchette, and an area of erythema that encompassed "everything inside the labia minora."  (Doc. 10-4 at 48, 51-53, 55-57).  Additional evidence supporting that Sally was sexually assaulted was also presented, such as Sally's fractured elbow, a bite mark, and injuries to Sally's wrists, legs, arm, breast, and chin.  (*Id.* at 34–45, 56; Doc. 10-3 at 41-42, 75-76).  Sally's statement "I've been raped" is therefore cumulative to Nurse Bonner's testimony and other evidence.  Unlike in *Deck*, the record is not so evenly balanced that there is grave doubt as to whether Sally's statement had a "substantial and injurious effect or influence in determining the jury's verdict."  Given the evidence in the record, the undersigned does not find that Sally's statement had a "substantial and injurious effect or influence in determining the jury's verdict. *Brecht*, 507 U.S. at 637 (citation omitted).  Accordingly, even if the admission of Sally's statement was an unreasonable application of *Crawford*, it is harmless.  Therefore, the undersigned recommends for the reasons set forth above that Ground Four be denied on the merits.

**2.  Ground Six**

In Ground Six, Petitioner argues that he "was subjected to a violation of the 5[th] and 14th Amendment U.S. Constitutional protections of due process and equal protection where the evidence was in fact insufficient to sustain guilty verdicts for aggravated assault."  (Doc. 1 at 11).  Specifically, Petitioner challenges the finding that Petitioner broke Sally's elbow, stating that:

> The victim when viewed initially by her daughter was seen to be holding her elbow.  The victim could never articulate how, when or why her arm was injured.  The examination by medical professionals (doctor) could not determine the cause of the fracture.  No testimony was ever provided that petitioner was in fact responsible for the injury.

As in the merits review of Ground Four, the Petitioner must show that the State's decision is (i) contrary to, or involved an unreasonable application of, clearly established Federal law (as determined by the U.S. Supreme Court) or (ii) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d)(1), (2).

The relevant U.S. Supreme Court case as to Petitioner's Ground Six is *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Court held that a challenge to the sufficiency of the evidence to support a conviction must be rejected unless based on the evidence presented at trial, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Id*. at 324.  In making this evaluation, a court must not only view the evidence in the light most favorable to the prosecution, but must also presume the trier of fact resolved conflicting evidence in favor of the prosecution.  *Id*. at 319, 326; *Taylor v. Stainer*, 31 F.3d 907, 908-09 (9th Cir. 1994).  This "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *U.S. v. Milwitt*, 475 F.3d 1150, 1162 (9th Cir. 2007) (internal quotation marks and citation omitted).

Here, the Arizona Court of Appeals found that sufficient circumstantial evidence

supports Petitioner's aggravated assault conviction, stating that:

> The evidence established that an intruder broke into [Sally's] home by using a rock to shatter a glass door; then he sexually assaulted her, causing numerous injuries that were not apparent less than nine hours earlier, including a broken elbow that was demonstrably painful to the victim. Given the violent nature of the attack and the evidence presented, a reasonable trier of fact could find defendant guilty of aggravated assault. (Doc. 10-8 at 225).

There is sufficient evidence supporting a finding that Petitioner fractured Sally's arm. First, Patricia saw no indication that Sally was injured on the night of June 17, 2006. (Doc. 10-3 at 33, 48). Then at 4:45 a.m. on June 18, 2006, Sally called and asked her daughter, Patricia, to come over to her house. (*Id*. at 49). Sally was "very upset" and was "having trouble talking." (*Id*.). When Patricia arrived at Sally's house, Sally was upset, shaking, and holding her left elbow. (*Id*. at 57).

As Patricia was speaking with the police dispatcher, Patricia commented on the blood on the back of Sally's pajamas, and Sally yelled, "I've been raped." (*Id*. at 69-70). Medical personnel diagnosed Sally with numerous injuries, such as a fractured elbow, contusions and abrasions on her chin, left arm, wrists, legs, and one of her breasts, a bite mark, three "penetration injuries," and areas of erythema on her labia minora and around her anus. (*Id*. at 41-42; Doc. 10-4 at 34-64). At trial, orthopedic surgeon Dr. Greg Keller, M.D. testified that a fractured elbow could be sustained if a person is knocked down. (Doc. 10-3 at 44). Finally, Petitioner's DNA was found on Sally's body. (Doc. 10-5 at 99, 149, 154-56).

Considering all of the evidence, it cannot be concluded that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." The undersigned thus finds that the Arizona Court of Appeals' reasoning is neither contrary to nor an unreasonable application of *Jackson*. As such, the undersigned recommends that the Court deny Ground Six on the merits.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that the Court deny and dismiss the Petition (Doc. 1) with prejudice.

Accordingly,

**IT IS RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because dismissal of the Petition is justified by a plain procedural bar and because Petitioner has not made a substantial showing of the denial of a constitutional right in his remaining claims for relief.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See Robbins v. Carey*, 481 F.3d 1143,1146-47 (9th Cir. 2007).

Dated this 21st day of January, 2015.

_____

Eileen S. Willett
United States Magistrate Judge

- 23 -