IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Arthur Martinez,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>　　　　　　Respondents. | No. CV-13-02423-PHX-DLR<br><br>**ORDER** |

Pending before the Court is Petitioner's petition for writ of habeas corpus, (Doc. 1), United States Magistrate Judge Eileen S. Willett's Report and Recommendation ("R&R"), (Doc.13), and Petitioner's Objection to the Report and Recommendation, (Doc. 14). The Magistrate Judge recommended that the Court deny the petition and that it be dismissed with prejudice because it is barred by the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") statute of limitations. Additionally, the Magistrate Judge found that Grounds One, Two, Three and Five, as well as a portion of Ground Six are barred under the Procedural Default Doctrine. Finally, the Magistrate Judge found that the remaining grounds, Ground Four and a portion of Ground Six, should be denied on the merits. Petitioner objected to all of the Magistrate Judge's findings. (Doc. 14.)

**I. Factual Background**

The R&R summarized the factual background, (Doc. 13 at 2–4), and the Petitioner did not object to this history, (Doc. 14). The Court adopts the R&R's history.

Specifically, in 2008 Petitioner was convicted of the following crimes: (i) burglary in the second degree (a class 3 felony); (ii) kidnapping (a class 2 felony); (iii) aggravated assault (a class 4 felony); and (iv) sexual assault (a class 2 felony). (Doc. 10-8 at 65–66.) The trial court imposed sentences resulting in 30.5 years, which Petitioner is serving at the Arizona State Prison Complex in Florence, Arizona. (Doc. 13 at 2.) The R&R recounted a summary of the facts underlying Petitioner's convictions:

> In the early morning hours on June 18, 2006, an 88 year old woman named Sally called and asked her daughter, Patricia, to come over to her house. (Doc. 10-3 at 49). Sally was "very upset" and was "having trouble talking." (*Id.*). When Patricia arrived at Sally's house, she noticed that the glass on the kitchen door had been broken and saw a rock inside the door that had been used to smash the glass. (*Id.* at 53–54, 57). Sally was still very upset, was shaking, and was holding her left elbow. (*Id.* at 57). Patricia saw blood on the collar area of Sally's pajamas. (*Id.* at 60). Patricia then searched the house for an intruder, while Sally followed behind. (*Id.* at 59–60).
>
> When Patricia completed the search, she contacted the police. (*Id.* at 65–66). While on the phone, Patricia saw blood on the back of Sally's pajamas that she did not see before as Sally had been following her throughout the house. (*Id.* at 66). Seeing the blood, Patricia exclaimed to the police dispatcher "[O]h, my God, there's blood all over the back of her pajamas." (*Id.* at 69–70). Sally then turned to Patricia and yelled "I've been raped." (*Id.* at 70).
>
> Paramedics arrived and treated Sally, who sustained a fracture of the olecranon (the bone at the tip of the elbow where the joint comes together). (*Id.* at 41–42). Sally was also examined by registered nurse Shawn Bonner. (Doc. 10-4 at 25, 31–33). Nurse Bonner noted numerous contusions and abrasions on Sally's chin, left arm, left and right wrists, legs, and one of her breasts. (*Id.* at 34–46). In addition, Nurse Bonner performed a genital and anal exam and found multiple injuries. (*Id.* at 46–64).
>
> Nurse Bonner's examination included swabbing multiple areas of Sally's body for DNA. (*Id.* at 45, 66–67, 75, 81–83, 100). A forensic scientist at the City of Phoenix Police Department determined that the DNA profile from Sally's right breast was a hundred percent match with Petitioner's known DNA. (Doc. 10-5 at 99, 149). The scientist also determined that the DNA profile taken from Sally's left fingernail could not have come from anyone other than Petitioner. (Doc. 10-5 at 154). Moreover, Petitioner could not be excluded from the DNA mixture taken from Sally's left thigh. (Doc. 10-5 at 155–56).

(Doc. 13 at 2–3)

The R&R recounted the procedural history:

> Following his 2008 conviction and sentence, Petitioner appealed to the Arizona Court of Appeals. In its October 1, 2009 decision, the Arizona Court of Appeals affirmed. (Doc. 10-8 at 214–28). On March 16, 2010, the Arizona Supreme Court denied review of Petitioner's appeal. (Doc. 10-9 at 3).
>
> On August 10, 2010, Petitioner's appellate counsel filed an untimely notice of post-conviction relief ("PCR"). (Doc. 10-9 at 5–8). Counsel claimed that the untimely PCR filing was due to "ineffective assistance of appellate counsel." (*Id.* at 6–7). The Superior Court allowed the untimely PCR filing to proceed, but stated that the "allowance does not constitute any expression of opinion that defendant has met the requirements to file an untimely petition, or on the merits of any such claim, or that any claims raised in the petition are not procedurally precluded." (*Id.* at 11–12). The court also appointed the Office of the Legal Advocate to represent Petitioner in his PCR matter. (*Id.* at 12).
>
> After PCR review, Petitioner's PCR counsel did not find any claims for relief to raise in PCR proceedings. (*Id.* at 16–17). On February 11, 2011, the Superior Court granted Petitioner 45 days in which to file a pro per PCR petition. (*Id.* at 20). After multiple deadline extensions, on July 5, 2011, Petitioner filed a PCR petition that raised five claims. (*Id.* at 25–95). On November 14, 2011, the Superior Court denied his petition, finding that four of the five issues are "all matters that could have been raised on direct appeal under Rule 31, Arizona Rules of Criminal Procedure, and/or a post-trial motion under Rule 24, Arizona Rules of Criminal Procedure" and are therefore precluded from postconviction relief under Rule 32, Arizona Rules of Criminal Procedure. (*Id.* at 109). As to the final issue, which alleged the ineffective assistance of counsel, the Court found that Petitioner failed to demonstrate a colorable claim. (*Id.* at 109–10).
>
> After the denial for PCR relief, Petitioner filed a petition for review with the Arizona Court of Appeals. (*Id.* at 122–30). On June 24, 2013, the Arizona Court of Appeals denied relief, explaining that Petitioner failed to comply with Rule 32.9 of the Arizona Rules of Criminal Procedure, which requires a petitioner to present issues and material facts supporting a claim in a petition for review. (*Id.* at 144–45). The Court also found that the trial court did not abuse its discretion in denying post-conviction relief. (*Id.*). On November 13, 2013, the Arizona Supreme Court denied Petitioner's petition for review. (*Id.* at 170).

(Doc. 13 at 3–4.)

**II. R&R**

On January 22, 2015, the Magistrate Judge issued an R&R recommending that the Court deny the Petition on a number of grounds.

**A. The Petition is Time-Barred by the AEDPA.**

The R&R explained that the AEDPA provides a one year statute of limitations for state prisoners to file a petition for writ of habeas corpus in federal court, (Doc. 13 at 10), that AEDPA's one-year statute of limitations begins to run when the time to file a U.S. Supreme Court petition for writ of certiorari regarding a conviction has expired, (*id.* (citing *Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999)), and that time expires 90 days after entry of an order by the state court of last resort denying discretionary review, (*id.* (citing Supreme Court Rule 13)).  The R&R found that, because the Arizona Supreme Court denied review of Petitioner's appeal on March 26, 2010, the one-year statute of limitations began to run on June 14, 2010, and expired on June 14, 2011. (Doc. 13 at 10.)  Although the R&R found that Petitioner had not argued that tolling applies, the Magistrate Judge reviewed the facts and determined that, under these facts, tolling does not apply.  As to equitable tolling, the R&R found that Petitioner failed to meet his burden of showing that extraordinary circumstances made it impossible for him to file a timely federal petition.  Because the Petition was filed on November 26, 2013, more than two years after the statute of limitations expired, the R&R found that the Petition is time-barred.

**B. Grounds One, Two, Three, Five, and a Portion of Ground Six are Barred under the Procedural Default Doctrine.**

In the R&R, the Magistrate Judge recommended a finding that Grounds One and Two are barred by the Procedural Default Doctrine because they were presented in Petitioner's July 5, 2011, PCR Petition, (*id.* at 12–13), which the Superior Court found were precluded from PCR relief because they "could have been raised on direct appeal . . . or a post-trial motion . . .", (*id.* at 12–13).  The Arizona Court of Appeals affirmed the trial court and also denied relief on the grounds that Petitioner failed to comply with Rule 32.9 of the Arizona Rules of Criminal Procedure 32.2(a)(3).  (*Id.* at 13.)  The Magistrate

- 4 -

Judge found that the state court findings constitute "adequate and independent" state grounds for denying review. (*Id.* at 14 (citing *Stewart v. Smith*, 536 U.S.856, 860 (2002)).)

In the R&R, the Magistrate Judge recommended a finding that Ground Three is barred by the Procedural Default Doctrine because it was presented in Petitioner's July 5, 2011, PCR Petition, (*id.* at 12–13), which the Superior Court denied, finding that Petitioner had failed to meet his burden of proof on the ineffective assistance of counsel claim, and that the sufficiency of the search warrant claim was precluded from PCR relief because it could have been raised on direct appeal or in a post-trial motion. (*Id.* at 14.) The Arizona Court of Appeals affirmed the trial court's denial of relief. The Magistrate Judge further found that, because Petitioner had failed to challenge in Arizona state court the portion of his claim in Ground Three that his appellate counsel was ineffective for failing to move for an evidentiary hearing, it is procedurally defaulted. (*Id.* at 14 (citing *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002)).)

In the R&R, the Magistrate Judge recommended a finding that Ground Five is barred by the Procedural Default Doctrine because he presented it in his direct appeal as a question of state law, not federal law. The Magistrate Judge noted that in his 2008 Appellant's Opening Brief, Petitioner discussed Arizona law and made no reference to state law and found that Petitioner's failure to alert the Arizona state court to the federal nature of the claim amounts to a failure to exhaust state remedies. (*Id.* at 15 (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995))). The Magistrate Judge further indicated that because Petitioner would be precluded from PCR relief on Ground Five under Rule 32 of the Arizona Rules of Criminal Procedure, Ground Five is technically exhausted and deemed procedurally defaulted. (*Id.* at 15-16 (citing *Beaty*, 303 F.3d at 987)).

In the R&R, the Magistrate Judge recommended a finding that the equal protection portion of Ground Six is barred by the Procedural Default Doctrine because Petitioner did not alert the state court to the alleged federal claim of equal protection in his direct appeal.

**C. Petitioner's Procedural Default is Not Excused.**

In the R&R, the Magistrate Judge recommended a finding that Petitioner's procedural defaults not be excused because Petitioner did not show cause and prejudice or, alternatively, a fundamental miscarriage of justice. (*Id*. at 16 (quoting *Beaty*, 303 F.3d at 987).) The Magistrate Judge noted in the R&R that Petitioner did not offer any reason to excuse the procedural defaults. The R&R further points out that Petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings, (*id.* at 17 (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993))), and that the narrow exception set forth in *Martinez v. Ryan*, 132 S.Ct. 1039 (2012) does not apply in this case because Petitioner cannot meet the "substantial" claim requirement of the four-part *Martinez* test, (*id*. at 17).

**D. Ground Four and a Portion of Ground Six Should be Denied on the Merits.**

In the R&R, the Magistrate Judge recommended a finding that Petitioner's Ground Four be denied on the merits because the Arizona Court of Appeals application of the relevant United States Supreme Court cases was not objectively unreasonable. (*Id.* at 18–19). Specifically, the R&R found that Arizona court's application of *Crawford v. Washington*, 541 U.S. 36 (2004) and *Davis v. Washington*, 547 U.S. 813 (2006), was objectively reasonable in its ruling that the victim's statement "I've been raped" was spontaneous and nontestimonial, and its admission, therefore, did not violate the Petitioner's confrontation rights. (*Id.* at 18–19). The R&R further found that, even if the admission of the statement was an unreasonable application of clearly established Federal law, the evidence at trial was so overwhelming that admission of the statement was harmless. (*Id.* at 20.)

The R&R, after summarizing the evidence at trial, and relying on *Jackson v. Virginia*, 443 U.S. 307 (1979), recommended that Ground Six be denied on the merits because it could not be concluded that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." (*Id*. at 21–22.) The R&R found that the Arizona Court

- 6 -

of Appeal's rejection of Petitioner's claim that he was subjected to a violation of the 5th and 14th Amendments' constitutional protections of due process and equal protection because the evidence was in fact insufficient to sustain guilty verdicts for aggravated assault was neither contrary to nor an unreasonable application of *Jackson.* (*Id*. at 22).

**III. Petitioner's Objections**

### A. The Time Bar of the AEDPA/Procedural Default Doctrine.

In his objections Petitioner blends the AEDPA statute of limitations argument with the procedural default argument, seeking relief from both on the ineffective assistance of counsel allegations. (Doc. 14 at 2–7.) The Court will address the issues separately.

Because the Petition was untimely filed, the first question to address is the question of tolling. The AEDPA's one-year statute of limitations is statutorily tolled for the "time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). Petitioner argues that the August 10, 2010, untimely filing of his PCR tolled the AEDPA time bar until June 13, 2013, when the Court of Appeals affirmed the trial court's ruling that Petitioner's PCR was procedurally barred. (*Id*. at 5–7.)

Petitioner has the burden of showing that the AEDPA's statute of limitations period was sufficiently tolled. *Zepeda v. Walker*, 581 F.3d 1013, 1019 (9th Cir. 2009). For statutory tolling to occur, a PCR must be "properly filed." 28 U.S.C. § 2244(d)(2). Because Petitioner's notice of PCR was untimely, the R&R correctly found that his petition had no statutory tolling effect on the AEDPA's statute of limitations. (Doc. 13 at 11.)

Petitioner states that his PCR counsel, through no fault of Petitioner, missed the PCR filing deadline. (Doc. 14 at 3.) Although Petitioner does not label it as such, the Court will treat Petitioner's statement as an argument for equitable tolling. An equitable tolling argument places upon Petitioner the burden to show that extraordinary circumstances beyond the Petitioner's control made it impossible for him to file a timely federal petition.

There was no secret that the notice of PCR filed by Petitioner's counsel on August 10, 2010, was untimely. (Doc. 10-9 at 5–8.) The face of the Petition states "This Notice of Post-Conviction Relief, therefore, is untimely filed . . . ." (*Id.* at 6.) Although the Superior Court allowed the untimely filing to proceed, the court expressly stated on October 11, 2010, that it was not finding that Petitioner "has met the requirements to file an untimely petition." (*Id*. at 11–12). The fact that the Superior Court allowed the untimely PCR to proceed did not create an extraordinary circumstance beyond the Petitioner's control that made it impossible to file a timely federal petition. It was clear from both the PCR itself and the Superior Court's order that the PCR was untimely. The Court of Appeals, unsurprisingly, ruled that Petitioner's PCR was untimely. Petitioner had one year after the time to file a petition for writ of certiorari expired, until June 14, 2011, to file his federal petition. He still had ten months after the untimely filing of his August 10, 2010 PCR, which stated on its face it was untimely, to file his Petition. It might have been beyond Petitioner's control that his counsel filed an untimely PCR, but the filing of a federal petition was not beyond Petitioner's control. He filed it himself. Where, as here, the Petitioner was on notice that the PCR was untimely and still had nearly a year to file the federal petition before the AEDPA's statute of limitations expired, the extraordinary circumstance beyond Petitioner's control required for the operation of equitable tolling does not exist.

The Court understands Petitioner's objection to the procedural bar determinations in the R&R to be that he should be excused from his failure to comply by the ineffective assistance of PCR and Appellate counsel. (Doc. 14 at 2–7.) He argues that ineffective assistance of counsel is proven by the Superior Court finding that the issues raised in the PCR should have been raised on direct appeal. (*Id*. at 4.) As the Court understands the objection, Petitioner argues that *he* made no "procedural defaults" and should not be bound by the mistakes of counsel. (*Id.* at 6.) Petitioner argues that the ineffective assistance of counsel is a "question for this court ripe for determination." (*Id*. at 5 (citing *Martinez v. Ryan*, 132 S.Ct. 1039 (2012)).)

A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Negligence on the part of a prisoner's postconviction attorney does not qualify as "cause" because the attorney is the prisoner's agent, and under "well-settled principles of agency law" the principal bears the risk of negligent conduct on the part of his agent. *Id.* at 754–55. Under *Martinez,* a narrow and limited exception to the general rule that a prisoner is bound by his PCR attorney's negligence where it is alleged that ineffective assistance of counsel in a post-conviction proceeding resulted in a failure to assert that there was ineffective assistance of counsel in trial proceedings. *Martinez*, 132 S.Ct. at 1315; *Hutton v. Sinclair*, 732 F.3d 1124, 1128–29 (9th Cir. 2013.)

Because Grounds One, Two, Five and Six of the Petition do not allege ineffective assistance of counsel as the underlying claim, those counts do not meet the *Martinez* exception. Ground Three alleges ineffective assistance of trial counsel for failing "to secure an expert witness to confront, refute or explain inconsistencies as to DNA evidence." That ground, however, fails to satisfy the *Martinez* requirement that the underlying claim was "substantial." *Martinez*, 132 S.Ct. at 1318. The Petition does not show that there was an expert available that could have provided testimony helpful to Petitioner. There is no allegation of what the inconsistencies were or what evidence such an expert could have provided. Without such information, the Court is left with mere speculation, which is not sufficient for a finding of prejudice or that the underlying claim was substantial.

Ground Three also claims that trial counsel was ineffective for failing to "challenge the sufficiency for the states (sic) search warrant based on erroneous evidence." (Doc. 1 at 8.) Again, the Petition leaves the Court with mere speculation. There is no showing that a motion to suppress would have been successful or, if it had been successful, that the outcome of the trial would have changed.

The Petition fails to provide the Court with anything other than speculation about trial counsel's performance, whether it fell below the objective standards of

- 9 -

1 reasonableness, and whether, but for the alleged errors, the trial outcome would have
2 been different, as required by *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).
3 Without such a showing, Petitioner cannot establish that the failure of his PCR lawyer to
4 raise these claims was ineffective, nor can he meet the *Martinez* requirement of showing
5 that the claims are substantial. The procedural default determinations set forth in the
6 R&R for Grounds One, Two, Three, Five, and a portion of Ground Six are not excused.

Petitioner next argues in his objection that he did alert the state court "as to the federal implication of his 14th Amendment Claim . . . by asserting the principle and violation of said right upon which he relies." (Doc. 14 at 8–9.) However, the mere claim that he made such assertion does not establish anything. If the next paragraph in the Objection, which alleges Petitioner filed a timely reply and asks the Court to search the record for it, (*id*. at 9), is meant to support his position that he alerted the state court to his federal claim, the Court is left with nothing to consider. The Court does not know to what reply the objection refers or where to find it.

**B. Ground Four and a Portion of Ground Six.**

Petitioner re-argues in his objection to the R&R's finding on Ground Four that he was denied his right to confront his accuser when the trial court allowed admission of the victim's statements, which he contends were testimonial and not spontaneous. (*Id.* at 9.) The Court agrees with the R&R's analysis of *Crawford* and *Davis*. The Arizona Court of Appeals found that the victim's statement, "I've been raped," was spontaneous and nontestimonial and that its admission, therefore, did not violate defendant's confrontation rights. The Court agrees with the R&R's conclusion that the Arizona Court of Appeals' application of *Crawford* and *Davis* to Petitioner's Confrontation Clause challenge is objectively reasonable. The Court also agrees with the R&R's conclusion that, even if the admission of the victim's statement was an unreasonable application of *Crawford*, it is harmless.

As to Ground Six, Petitioner argues that because "no medical professional could attribute a cause for the fractured elbow" there was insufficient evidence that he was the

cause of the injury. (Doc. 14 at 10.) The Court agrees with the R&R's analysis of the facts in light of *Jackson*, and the determination that there is sufficient evidence supporting a finding that Petitioner fractured the victim's arm. Medical personal treating the victim found numerous injuries, in addition to the fractured elbow, including physical evidence of sexual assault. (Doc. 10-3 at 41–42; Doc. 10-4 at 34–64). Dr. Keller testified at trial that a fractured elbow could be sustained if a person is knocked down. (Doc. 10-3 at 44.) Further, Petitioner's DNA was found on Sally's body. (Doc. 10-5 at 99, 149, 154–56.) The Court agrees with the R&R that it cannot be concluded that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." The Arizona Court of Appeals' reasoning is neither contrary to nor an unreasonable application of *Jackson.*

**IV. Conclusion**

Based on the foregoing,

**IT IS ORDERED** that the Report and Recommendation, (Doc. 13), is accepted and adopted, the objections, (Doc. 14), are overruled, the Petition is denied with prejudice, and the Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that, in the event Petitioner files an appeal, and pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court denies issuance of a certificate of appealability because dismissal of the Petition is based on a plain procedural bar and jurists of reason would not find this Court's decision debatable or wrong, and because Petitioner has not made a substantial showing of the denial of a constitutional right in his remaining claims for relief.

Dated this 19th day of March, 2015.

Douglas L. Rayes
United States District Judge